# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

COREY R. BURGESS,

        **Plaintiff,**

v.                                             **Case No: 6:18-cv-0094-Orl-DCI**

COMMISSIONER OF SOCIAL
SECURITY,

        **Defendant.**

_____

## MEMORANDUM OF DECISION

Corey Burgess ("Claimant") appeals to the District Court from a final decision of the Commissioner of Social Security (the Commissioner) denying her applications for disability insurance benefits (DIB) and supplemental security income (SSI). Doc. 1; R. 1-6, 222-40. Claimant argued that the Administrative Law Judge (the ALJ) erred by: 1) failing to properly weigh the medical opinion evidence in determining Claimant's residual functional capacity, and 2) failing to properly evaluate Claimant's testimony. Doc. 23 at 24, 42. For the reasons set forth below, the Commissioner's final decision is **AFFIRMED**.

## I.      THE ALJ'S DECISION

Claimant filed applications for DIB and SSI in 2014. R. 222-40. Claimant alleged a disability onset date of April 1, 2013. R. 225, 237.

The ALJ issued her decision on February 1, 2017. R. 18-33. In the decision, the ALJ found that Claimant had the following severe impairments: fibromyalgia, degenerative disc disease lumbar spine, congestive heart failure, nonischemic cardiomyopathy, bilateral sacroiliitis, status

1

post pacemaker or defibrillator implant in September 2012, status post lumbar fusion at L4-5 in 2011, and obesity. R. 20-21. The ALJ found that Claimant's impairments, or combination thereof, did not meet or medically equal the severity of one of the listed impairments. R. 23. The ALJ found that Claimant had a residual functional capacity (RFC) to perform sedentary work.[1] R. 24. Specifically, the ALJ found as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). Specifically, the claimant can lift and/or carry 10 pounds, occasionally, stand and/or walk 2 hours in an 8 hour workday, and sit 6 hours in an 8 hour workday. The claimant can occasionally climb ramps or stairs, but never climb ladders, ropes or scaffolds. She can occasionally balance, stoop, kneel, crouch or crawl. The claimant should avoid temperature extremes and humidity. The claimant has an ability for low stress work, defined as unskilled, simple and routine work due to pain. The claimant can frequently but not constantly handle and finger with the need to alternate positions between sitting and standing every 30 minutes.

R. 24. The ALJ posed a hypothetical question to the vocational expert (VE) that was consistent with the foregoing RFC determination, and the VE testified that Claimant was capable of performing jobs in the national economy. R. 58-61. The ALJ thus found that Claimant was capable of performing jobs that existed in significant numbers in the national economy. R. 32-33. Therefore, the ALJ found that Claimant was "not disabled." R. 33.

## II.  STANDARD OF REVIEW

"In Social Security appeals, [the court] must determine whether the Commissioner's decision is 'supported by substantial evidence and based on proper legal standards.'" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations omitted). The

---

[1] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560. The district court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

### III.    ANALYSIS

Claimant argues that the ALJ erred by assigning "little weight" to the opinions of three of Claimant's treating physicians, Drs. Davis, Hines, and Hardoon. Doc. 23 at 24-30. Further, Claimant argues that the ALJ erred by failing to properly evaluate Claimant's testimony. Doc. 23 at 42-45. The Commissioner responds that the ALJ's assessment of the physicians' opinions and finding that Claimant's testimony is inconsistent with the record are supported by substantial evidence. Doc. 23 at 31-42, 46-51.

## A. Opinions of Medical Experts

At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work. *Phillips*, 357 F.3d at 1238. "The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The ALJ is responsible for determining the claimant's RFC. 20 C.F.R. §§ 404.1546(c); 416.946(c). In doing so, the ALJ must consider all relevant evidence, including, but not limited to, the medical opinions of treating, examining, and non-examining medical sources. 20 C.F.R. §§ 404.1545(a)(1), (3); 416.945(a)(1), (3); *see also Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012).

The weighing of treating, examining, and non-examining physicians' opinions is an integral part of steps four and five of the sequential evaluation process. In *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176 (11th Cir. 2011), the Eleventh Circuit stated that: "'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.'" *Id.* at 1178-79 (quoting 20 C.F.R. § 404.1527(a)(2)) (alterations in original). "[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Id.* at 1179 (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (quoting *Cowart v. Schwieker*, 662 F.2d 731, 735 (11th Cir. 1981)).

The ALJ must consider a number of factors in determining how much weight to give each medical opinion, including: 1) whether the physician has examined the claimant; 2) the length, nature, and extent of the physician's relationship with the claimant; 3) the medical evidence and explanation supporting the physician's opinion; 4) how consistent the physician's opinion is with the record as a whole; and 5) the physician's specialization. 20 C.F.R. §§ 404.1527(c); 416.927(c).

"The opinion of a treating physician . . . 'must be given substantial or considerable weight unless 'good cause' is shown to the contrary.'" *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (quoting *Lewis*, 125 F.3d at 1440). "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* at 1241 (citing *Lewis*, 125 F.3d at 1440). "[T]he ALJ must clearly articulate its reasons" "[w]hen electing to disregard the opinion of a treating physician." *Id.*

### 1) Medical Opinion of Rheumatologist Stacey Davis, M.D.

The ALJ assigned "little weight" to the opinion of Dr. Davis, a treating physician. R. 28. Claimant argues that the ALJ erred because the opinion of Dr. Davis was not inconsistent with the evidence of record and because Dr. Davis' opinion was made after the onset date of disability. Doc. 23 at 26-28.

On June 11, 2013 and July 29, 2013, Dr. Davis completed physical capacity questionnaires regarding Claimant. R. 28. Her questionnaires indicated that Claimant's functional capacity was limited to working no more than twenty hours per week and four hours per day. R. 841. The ALJ reported:

> In these questionnaires, Dr. Davis indicated that the claimant would be limited to sitting 1 hour at one time and sitting 4 hours if alternating positions; standing less than one hour at one time and 3 to 4 hours total if alternating positions; and walking 30 minutes at one time and 2 hours if alternating positions. Dr. Davis opined that

the claimant can never climb but could occasionally balance, stoop, bend, kneel and crouch. Dr. Davis opined the claimant could frequently reach and rotate her forearms and occasionally handle, finger, grip, and use [a] keyboard. Finally, Dr. Davis opined that the claimant cannot work around unprotected heights, moving machinery, changes in temperature, or humidity, or exposed to dust, fumes, and gases (Exhibit 21F/48-50 and 21F/67-69). I give this opinion little weight because it was made prior to the claimant's alleged onset date of disability and thus, does not reflect claimant's condition during the period under adjudication, or the observable clinical signs of record.

Dr. Davis's questionnaires are inconsistent with records from the claimant's cardiologist, Dr. Grecul, on October 15, 2013, which indicate the claimant was cardiovascularly stable, could perform normal activity, and denied fatigue, weakness, or lethargy (Exhibit 10F/2). They are inconsistent with Dr. Ramirez's evaluation on September 30, 2013 which revealed normal ambulation, intact sensation, normal strength and muscle tone, and full range of motion of the hands, wrists, elbows, knees, shoulders, and cervical and thoracolumbral spine (Exhibit 12F/20-22). They are inconsistent with the examination by neurologist, Dr. McNulty, on February 24, 2014, which revealed full motor strength at 5/5 in the arms and legs, normal muscle bulk, intact sensation in the arms and legs, normal gait and station, and intact coordination (Exhibit 13F). They are inconsistent [with] the examination by Dr. Udeshi on September 10, 2014 which revealed full muscle strength at 5/5, a normal gait, intact sensation in the lower extremities, and straight leg raise testing was negative bilaterally (Exhibit 17F/1-7). Finally, Dr. Davis's questionnaires are inconsistent with Dr. Koshy's examination on November 17, 2016, which revealed no acute distress with clear lungs bilaterally, regular heart rate and rhythm, and intact muscle strength and tone (Exhibit 26F).

R. 28-29. The Court interprets the sentence "I give this opinion little weight because it was made prior to the claimant's alleged onset date of disability and thus, does not reflect the claimant's condition during the period under adjudication, or the observable clinical signs of record," to convey that there are two distinct reasons for assigning "little weight" to the opinion of Dr. Davis. R. 28. First, the ALJ considered the observations to be prior to the onset date of disability. Second, the ALJ considered Dr. Davis' opinion to be inconsistent with the observable clinical signs of record.

The undersigned finds no merit in Claimant's argument that the ALJ erred by finding that Dr. Davis' opinion was inconsistent with the evidence in the record. Claimant argues that "the ALJ

did not credit any evidence, let alone substantial evidence, contradicting" the opinion of Dr. Davis. Doc. 23 at 28. While a treating physician's opinion, such as Dr. Davis', is typically given "substantial or considerable weight," the ALJ determined that the evidence in the record provided good cause to attribute "little weight" to Dr. Davis' opinion. R. 28-29; *see Patterson v. Chater*, 983 F. Supp. 1410, 1414 (M.D. Fla. 1997) ("[I]n order for the treating physician's opinion to be entitled to controlling weight, the opinion must be well-supported by medically acceptable clinical and laboratory diagnostic techniques, and must not be inconsistent with the other substantial evidence.") (citing 20 C.F.R. § 404.1527(e)).

The undersigned finds that the ALJ had substantial evidence supporting a finding of good cause to assess "little weight" to the opinion of Dr. Davis. Specifically, the ALJ identified medical records from five physicians, Drs. Grecul, Ramirez, McNulty, Udeshi, and Koshy, as substantial evidence that is inconsistent with Dr. Davis' opinion. Of these physicians, Drs. Ramirez and Udeshi were identified as treating physicians by Claimant and Commissioner, while Drs. Grecul, McNulty, and Koshy were identified as examining physicians. Doc. 23 at 13-21. According to the records from these examination, Claimant was "cardiovascularly stable" and able to "perform normal activity" without fatigue or weakness. R. 28-29. They also indicate that Claimant had normal strength, full range of motion, intact sensation and coordination, clear lungs bilaterally, and no acute distress. R. 29. Indeed, these records provide clearly articulated and "observable clinical signs of record" that are inconsistent with the opinions provided by Dr. Davis. Because these records provide sufficient evidence to lead a reasonable person to accept as adequate the conclusion of the ALJ, the ALJ's decision is supported by substantial evidence. Because Dr. Davis' opinion is inconsistent with that substantial evidence, the ALJ did not err in finding good cause to assess her opinion "little weight."

With regard to Claimant's argument that the ALJ erred by determining that Dr. Davis' opinions were made prior to the onset date of April 1, 2013, Claimant is correct. Indeed, Dr. Davis' opinions were established on June 11 and July 29, 2013. R. 28. However, "when an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand." *Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)). Because the ALJ found Dr. Davis' opinions to be inconsistent with the evidence in the record, her decision will stand, regardless of the factual mistake as to the timing of the observations by Dr. Davis. *See id.*; *Brown v. Comm'r of Soc. Sec.*, 459 F. App'x 845, 846 (11th Cir. 2012) (finding the ALJ's inaccurate assertion "harmless because the remaining evidence provided a substantial basis for the ALJ's conclusion); *see also Ostborg v. Comm'r of Soc. Sec.*, 610 F. App'x 907, 917-18 (11th Cir. 2015) (finding that, in regard to the ALJ's credibility evaluation, the ALJ's discussion of some inconsistent statements, even if erroneous, was harmless error where the ALJ had provided several specific reasons for discounting the claimant's statements, and substantial evidence supported those reasons). Thus, the ALJ's finding with respect to her assessment of Dr. Davis' opinion is affirmed.[2]

### 2) Medical Opinion of Primary Care Physician Gregory Hines, M.D.

The ALJ assessed "little weight" to the opinion of Dr. Hines. R. 29-30. Claimant argues that the ALJ erred because the opinion of Dr. Hines is not inconsistent with the evidence of record. Doc. 23 at 26. Further, Claimant argues that the evidence in the "record directly contradicts the

---

[2] In support of her argument that the ALJ erred by basing her finding on "subjective complaints rather than appropriate medical findings," Claimant references fibromyalgia as a particularly difficult condition to diagnose. The Court finds this argument only applies to Dr. Hines. *See* discussion, *infra* Part III.A.2.

conclusion of the ALJ" that the treating physicians' opinions are based on "subjective complaints rather than appropriate medical findings . . . ." *Id.*

According to the parties, Dr. Hines is a treating physician. Doc. 23 at 15. The ALJ considered his opinion, which was based on observation and use of a multiple impairment questionnaire on May 1 and 2, 2014, as follows:

> On May 1, 2014, Dr. Hines opined the claimant would be limited to lifting and/or carrying objects over 15 to 20 pounds and is unable to perform regular activities without having a sudden onset which can debilitate her up to days. Dr. Hines also indicated that long-term walking or standing will also put pressure on her spine, causing additional discomfort. Dr. Hines opined that due to the combination of the claimant's congestive heart failure, fibromyalgia, and lumbar pain, she will not be able to recover at all and will most likely be debilitated for the rest of her life (Exhibit 16F/3-4).

> On May 2, 2014, Dr. Hines completed a multiple impairment questionnaire and opined that the claimant can only work with her hands for limited amount[s] of time before complete exhaustion and that her symptoms are likely to increase if she were placed in a competitive work environment. Dr. Hines opined the claimant would be limited to sitting 1 hour in an 8-hour day, standing and/or walking 2 hours in an 8-hour day, with the need to get up and move around every 20 to 30 minutes throughout the day for 15 minutes at a time. Dr. Hines limited the claimant to occasionally lifting and/or carrying up to 20 pounds. Dr. Hines indicated the claimant has minimal limitation grasping, turning, and twisting objects with the bilateral hands; minimal limitations with bilateral fine manipulation; but marked limitations using her arms for reaching (including overhead). Dr. Hines opined the claimant cannot keep her neck in a constant position and cannot perform a job that requires that activity on a sustained basis. Finally, Dr. Hines opined that the claimant lacks emotional stability to concentrate and is only capable of low stress because it increases pain and disorientation (Exhibit 16F/5-12).

> I give little weight to the opinions of Dr. Hines because they are based on the claimant's subjective complaints and inconsistent with the objective evidence as a whole. Specifically, records [from] Dr. Grecul on October 15, 2013, indicate the claimant was cardiovascularly stable, could perform normal activity, and denied fatigue, weakness, or lethargy (Exhibit 10F/2); Dr. Ramirez's evaluation on September 30, 2013 revealed normal ambulation, intact sensation, normal strength and muscle tone, and full range of motion of the hands, wrists, elbows, knees, shoulders, and cervical and thoracolumbral spine (Exhibit 12F/20-22); the examination by Dr. McNulty on February 24, 2014 revealed full motor strength at 5/5 in the arms and legs, normal muscle bulk, intact sensation in the arms and legs, normal gait and station, and intact coordination (Exhibit 13F); the examination by

Dr. Udeshi on September 10, 2014 revealed full muscle strength at 5/5, a normal gait, intact sensation in the lower extremities, and straight leg raise testing was negative bilaterally (Exhibit 17F/1-7); and Dr. Koshy's examination on November 17, 2016, revealed no acute distress with clear lungs bilaterally, regular heart rate and rhythm, and intact muscle strength and tone (Exhibit 26F).

R. 29-30.

The undersigned finds no merit in Claimant's argument that the ALJ erred by finding Dr. Hines' opinion inconsistent with the evidence in the record. Claimant again argues "the ALJ did not credit any evidence, let alone substantial evidence," in support of her finding. Doc. 23 at 28. Again, the undersigned will focus on the substantial evidence provided in the form of treating physician medical records from Drs. Ramirez and Udeshi, as well as examining physician records from Drs. Grecul, McNulty, and Koshy. According to the records from these examinations, Claimant was "cardiovascularly stable," able to "perform normal activity" without fatigue or weakness, and had normal strength, full range of motion, intact sensation and coordination, clear lungs bilaterally, and no acute distress; thus, the records provide substantial evidence to support the ALJ's finding that Dr. Hines' opinion is inconsistent with the evidence of record. R. 28-30. Because Dr. Hines' opinion is inconsistent with that substantial evidence, the ALJ did not err in finding good cause to assess his opinion "little weight."

Claimant further argues that the ALJ incorrectly found that "the opinions from treating rheumatologist Dr. Davis and treating physicians Drs. Hardoon and Hines are based on [Claimant's] subjective complaints rather than appropriate medical findings . . . ." Doc. 23 at 27. However, while the ALJ noted that the opinions of Drs. Davis, Hines, and Hardoon were "inconsistent with the objective evidence as a whole," she only found that Dr. Hines' opinion was "based on the claimant's subjective complaints." R. 28-30. In any event, Claimant seems to argue that the ALJ erred by not considering Dr. Hines' opinion because it was based on subjective

complaints that were inconsistent with the objective findings of the other physicians. Doc. 23 at 27.

According to Claimant, because her "chronic pain is related primarily to her fibromyalgia, which cannot be documented by any other means than clinical evidence of chronic widespread pain and the presence of tender points," physical examinations would not detect her fibromyalgia and should be "irrelevant to the validity of the findings from the treating doctors . . . ." Doc. 23 at 27-28. However, when objective evidence is inconsistent with the subjective evidence on record, the ALJ's credibility finding may be supported by substantial evidence. *See Hernandez v. Comm'r of Soc. Sec.*, 523 F. App'x 655, 657 (11th Cir. 2013) (holding that the ALJ's credibility finding was supported by substantial evidence when the objective medical records were inconsistent with the degree of impairment alleged and the claimant's self-reports to her doctors did not support the alleged severity of her symptoms); *Harrison v. Comm'r of Soc. Sec.*, 569 F. App'x 874, 877-78 (11th Cir. 2014) (approving ALJ's decision to give reduced weight to treating physician's opinion given inconsistencies in the record); *De Olazabal v. Comm'r of Soc. Sec.*, 579 F. App'x 827, 830 (11th Cir. 2014) (holding that "Claimant's subjective reports of her symptoms" to her doctor did not overcome substantial evidence in support of the ALJ's decision to discount that treating physician's opinion). Thus, given the numerous inconsistencies cited by the ALJ, the ALJ did not err in discounting Dr. Hines' opinion for use of subjective evidence.

Further, the ALJ's assessment of Dr. Hines' opinion was not based solely on Claimant's subjective complaints indicating fibromyalgia.[3] Rather, as discussed above, the ALJ found substantial evidence that supported her assessment that Dr. Hines' opinion was "inconsistent with

---

[3] Dr. Hines' opinion was based on the "combination of the claimant's congestive heart failure, fibromyalgia, and lumbar pain . . . ." R. 29.

the objective evidence as a whole." R. 29. Even if the ALJ improperly considered the subjectivity

of the evidence used by Dr. Hines, the undersigned must affirm the ALJ's decision because she

provided additional reasons for discrediting his opinion that are supported by substantial evidence.

*See Gilmore v. Astrue*, 2010 WL 989635, at *14-18 (N.D. Fla. Feb. 18, 2010) (finding that the

ALJ's decision to discount a treating physician's opinion was supported by substantial evidence,

even though two of the many reasons articulated by the ALJ were not supported by substantial

evidence); *D'Andrea v. Comm'r of Soc. Sec. Admin.*, 389 F. App'x 944, 948 (11th Cir. 2010) (per

curiam) (rejecting argument that ALJ failed to accord proper weight to treating physician's opinion

"because the ALJ articulated at least one specific reason for disregarding the opinion and the record

supports it"); *cf Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (holding that an ALJ's

failure to consider a claimant's inability to afford treatment did not constitute reversible error when

the ALJ did not rely primarily on a lack of treatment to find that the claimant was not disabled).

Thus, the ALJ's finding with respect to the opinion of Dr. Hines is affirmed.

### 3) Medical Opinion of Primary Care Physician Scott Hardoon, M.D.

Finally, the ALJ assigned "little weight" to the opinion of Dr. Hardoon. R. 30. Again,

Claimant argues that the ALJ erred by finding Dr. Hardoon's opinion inconsistent with the

evidence of record. Doc. 23 at 26.

The parties identified Dr. Hardoon as a treating physician. Doc. 23 at 2. On June 25, 2015,

he performed a medical source statement and gave an opinion on Claimant's functional ability. R.

30. The ALJ evaluated his opinion as follows:

> On June 25, 2015, Dr. Hardoon completed a medical source statement and opined
> the claimant can sit less than one hour in an 8-hour workday, stand and/or walk less
> than one hour in an 8-hour workday, should avoid continuous sitting, and can
> occasionally lift up to 5 pounds occasionally and lift nothing frequently. Dr.
> Hardoon indicated the claimant can never/rarely grasp, turn, and twist objects; can
> occasionally use her hands and fingers for fine manipulations; and can frequently

use her arms for reaching (including overhead). Dr. Hardoon opined the claimant would frequently experience pain, fatigue, or other symptoms severe enough to interfere with attention and concentration. Finally, Dr. Hardoon indicated the claimant would need to take unscheduled breaks to rest at unpredictable intervals during an 8-hour workday up to every 30 minutes (Exhibit 18F).

I give little weight to Dr. Hardoon's medical source statement because it is inconsistent with the objective evidence as a whole. Specifically, records [from] Dr. Grecul on October 15, 2013, indicate the claimant was cardiovascularly stable, could perform normal activity, and denied fatigue, weakness, or lethargy (Exhibit 10F/2); Dr. Ramirez's evaluation on September 30, 2013 revealed normal ambulation, intact sensation, normal strength and muscle tone, and full range of motion of the hands, wrists, elbows, knees, shoulders, and cervical and thoracolumbar spine (Exhibit 12F/20-22); examination by Dr. McNulty on February 24, 2014 revealed full motor strength at 5/5 in the arms and legs, normal muscle bulk, intact sensation in the arms and legs, normal gait and station, and intact coordination (Exhibit 13F); examination by Dr. Udeshi on September 10, 2014 revealed full muscle strength at 5/5, a normal gait, intact sensation in the lower extremities, and straight leg raise testing was negative bilaterally (Exhibit 17F/1-7); and Dr. Koshy's examination on November 17, 2016, revealed no acute distress with clear lungs bilaterally, regular heart rate and rhythm, and intact muscle strength and tone (Exhibit 26F).

*Id.*

The undersigned finds Claimant's argument that the ALJ erred by finding Dr. Hardoon's opinion to be inconsistent with the evidence of record to lack merit. The ALJ again cites the substantial evidence provided in the form of treating physician medical records from Drs. Ramirez and Udeshi, as well as examining physician records from Drs. Grecul, McNulty, and Koshy. *Id.* According to these examination records, Claimant was "cardiovascularly stable," able to "perform normal activity" without fatigue or weakness, and had normal strength, full range of motion, intact sensation and coordination, clear lungs bilaterally, and no acute distress; thus, the records provide substantial evidence that is inconsistent with the opinion of Dr. Hardoon. *Id.* Because Dr. Hardoon's opinion is inconsistent with that substantial evidence, the ALJ did not err in finding good cause to assess his opinion "little weight." As a result, the ALJ's finding as to Dr. Hardoon's opinion is affirmed.

### 4) Arguments Applicable to All Three Doctors (Drs. Davis, Hines, and Hardoon)

To the extent that Claimant relies on her argument that the ALJ erred because she decided to "reject[] the opinions from the treating physicians because [Claimant] was described as 'stable' from a cardiovascular standpoint," rather than consider her "rheumatological and musculoskeletal impairments," her argument is without merit. Doc. 23 at 28. Indeed, in rejecting the state examiner's opinion that Claimant could perform light work, the ALJ explained:

> [T]he undersigned considered the need for a defibrillator implantation in 2012; Dr. Davis' treatment records in 2013 which confirm joint tenderness and fibromyalgia tender points on examination; Dr. Ramirez's evaluation in September 2013 which revealed multiple trigger points consistent with fibromyalgia; Dr. Hines' treatment records in 2013 and 2014 which confirm tenderness in the lumbar spine, shoulder, elbows, knees, and hips on examination; the September 2014 evaluation [by Dr. Udeshi] at The Pain Institute which confirmed tenderness of the bilateral sacroiliac joints, a restricted lumbar range of motion due to pain, decreased sensation the right L5 distribution, positive Patrick's test bilaterally, and tenderness to palpation of the hips; as well as the hospital admission for chest pain secondary to a pulmonary embolism in October 2016.

R. 28 (citations omitted).

Contrary to Claimant's assertion that "[t]here is no indication the ALJ considered the context of the statements in light of the entire record that documents Plaintiff has other disabling conditions," the ALJ based her finding of an RFC for sedentary work primarily on the Claimant's rheumatological and musculoskeletal impairments. Doc. 23 at 28. Only after determining that "additional limitations are not warranted in view of the observable clinical signs noted above" did the ALJ consider the stability of Claimant's cardiovascular health. R. 28. The ALJ cited medical records indicating objective musculoskeletal and rheumatological findings such as the following: "normal or full muscle 5/5 strength with preserved range of motion, normal gait and station, and intact sensation*." Id.* Thus, the ALJ considered Claimant's cardiovascular health *in addition to* her rheumatological and musculoskeletal impairments.

14

Finally, Claimant argues that the ALJ erred by substituting her own interpretation of the medical findings for the opinions of the treating physicians. R. 29-30. In support of her position, she Claimant states that the ALJ "may not rely on her lay interpretation of the medical evidence to find [Claimant] can work at a particular RFC when . . . there is no medical evidence supporting such a finding." Doc. 23 at 30. However, as discussed previously, the ALJ cites objective medical records from five additional physicians in support of her finding that the opinions of the treating physicians are inconsistent with the evidence of record. R. 28-30. Again, because the ALJ's finding is supported by substantial evidence, good cause exists to discount the opinions of the treating physicians.

### B.      Failure to Properly Evaluate Claimant's Testimony

Claimant argues that the ALJ erred in finding that Claimant's testimony was inconsistent with the record because her finding is not supported by substantial evidence. Doc. 23 at 44.

A claimant may establish "disability through his own testimony of pain or other subjective symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). A claimant seeking to establish disability through his or her own testimony must show:

> (1) Evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (per curiam). If the ALJ determines that the claimant has a medically determinable impairment that could reasonably produce the claimant's alleged pain or other symptoms, the ALJ must then evaluate the extent to which the intensity and persistence of those symptoms limit the claimant's ability to work. 20 C.F.R. §§ 404.1529(c)(1); 416.929(c)(1). In doing so, the ALJ considers a variety of evidence, including, but not limited to, the claimant's history, the medical signs and laboratory findings, the claimant's

statements, medical source opinions, and other evidence of how the pain affects the claimant's daily activities and ability to work. 20 C.F.R. §§ 404.1529(c)(1)-(3); 416.929(c)(1)-(3). "If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so." *Foote*, 67 F.3d at 1561-62. The Court will not disturb a clearly articulated credibility finding that is supported by substantial evidence. *See id.* at 1562.

In her decision, the ALJ stated as follows with regard to Claimant's testimony and credibility:

> The claimant, a 36-year-old female as of the alleged onset date, alleges disability due to limitations imposed by fibromyalgia, degenerative disc disease, heart disease, and sacroiliitis. She alleges chronic pain in her low back, hips, legs, neck, shoulders, arms, and hands. She alleges chronic pain in her low back, hips, legs, neck, shoulders, arms, and hands. She alleges also generalized muscle pain, muscle spasms, muscle weakness, chronic fatigue, nausea, exhaustion, chest pain on exertion, shortness of breath, and an unsteady gait. At the hearing, the claimant testified that her fibromyalgia flares up 2 to 3 times a month and during the day, she can only sit 30 minutes at one time, stand 30 minutes at one time, can lift up to a gallon of milk, needs multiple breaks as needed, and takes a nap daily around 3 or 4 in the afternoon.

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to produce the above alleged symptoms. For example, the claimant's medical history is significant for right and left heart catheterization in 2007. She was diagnosed with fibromyalgia in 2009, and had an L5-S1 anterior lumbar interbody fusion in 2011. There is also evidence of congestive heart failure with severe left ventricular dysfunction in May 2012. The claimant required an automatic implantable cardioverter-defibrillator (AICD) implantation in September 2012. Medical records reveal ongoing treatment for fibromyalgia, chronic low back pain, polyarthropathy, and congestive heart failure, during the relevant period under adjudication.

> However, despite the claimant's medical history and current medical treatment and diagnoses, described above, I find that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence after April 1, 2013 and that the objective findings on physical examinations have not shown a degree of ongoing abnormality that would warrant greater limitations than those included in the above-assessed residual functional capacity.

R. 24-25. In her opinion, the ALJ then detailed the findings by each of Claimant's physicians since the alleged onset date of disability. R. 25-30.

Claimant argues that "[t]he ALJ's conclusion that [Claimant's] statements regarding the nature and severity of her impairments is not supported by the record lacks the support of substantial evidence." Doc. 23 at 44. She claims that "the ALJ erred by relying heavily on evidence that [Claimant's] cardiac conditions were described as stable and by concluding that the negative clinical examination findings are probative evidence that Plaintiff's chronic pain is not disabling." *Id.* at 44-45.

However, the ALJ cited substantial evidence in support of her finding that the Claimant's testimony was inconsistent with the record. In addition to the clinical findings cited by the ALJ in her rejection of the state examiner's opinion, as discussed previously, the ALJ noted:

> [A]dditional limitations are not warranted in view of the observable clinical signs noted above. Specifically, the undersigned considered that from a cardiovascular standpoint, the claimant can perform normal activities and only gets winded or shortness of breath with extreme activity. The undersigned considered that she has been found stable from a cardiovascular standpoint (Ex. 10F at 2, 4). In addition, generally examinations have revealed normal or regular heart and rhythm (Ex. 10F at 2; 26F) as well as normal or full muscle 5/5 strength with preserved range of motion (Ex. 6F/9-12 and 7F/22-25, Ex. 13F, 17F at 1, 12 see also Ex. 12F at 20-22, Ex. 25-26), normal gait and station, and intact sensation (Ex. 13F).

R. 28. The ALJ specifically considered medical findings unrelated to Claimant's cardiac issues: "normal or full muscle 5/5 strength with preserved range of motion, normal gait and station, and intact sensation." R. 28.

Further, the ALJ cited the medical records of treating physicians Drs. Ramirez and Udeshi, as well as the records of examining physicians Drs. Grecul, Ramirez, McNulty, and Koshy, all of which provide substantial evidence in support of her finding that Claimant's "statements . . . are not entirely consistent with the medical evidence." R. 25; *see Barnes v. Sullivan*, 932 F.2d 1356,

1358 (11th Cir. 1991) ("Even if we find that the evidence preponderates against the Secretary's decision, we must affirm if the decision is supported by substantial evidence."); *see also Davis v. Barnhart*, 153 F. App'x 569, 572 (11th Cir. 2005) (finding that to the extent that there is evidence which supported the claimant's position, it does not negate the substantial evidence supporting the ALJ's decision such that the court must affirm the ALJ). While Claimant claimed that she experienced "chronic fatigue," "exhaustion," and "shortness of breath," Dr. Grecul noted that Claimant "denied fatigue, weakness, or lethargy" and only became winded or short of breath as a result of extreme activity. *Id.* He also noted that her physical examination was "unremarkable," indicating "no wheezing, good respiratory effort, and no diminished breath sounds." *Id.* With respect to her claim of "muscle weakness," each of Drs. Ramirez, McNulty, Udeshi, and Koshy evaluated Claimant's muscle strength as "intact," "normal," or "full." R. 27. These evaluations, which include Claimant's own reporting of symptoms, among other findings, appear to directly contradict her testimony. Indeed, the ALJ clearly articulated substantial evidence to support her finding that Claimant's statements were inconsistent with the evidence of record.

Finally, Claimant relies on *Tavarez v. Comm'r of Soc. Sec.*, 638 F. App'x 841, 848 (11th Cir. 2016) in arguing that it is "reversible error for an ALJ to focus on periods of improvement in the context of impairments that wax and wane over time." Doc. 23 at 45. However, it appears that Claimant has misinterpreted *Tavares*. In *Tavares*, the court reversed the ALJ's finding that the physician's opinion, which included no mention of fluctuating symptoms, was inconsistent with the claimant's testimony that her symptoms did fluctuate. 638 F. App'x at 848. However, the Eleventh Circuit found that "Dr. Halpert's opinion reflects that his assessment was made with the understanding that Tavarez's symptoms did fluctuate." *Id.* Thus, because the treating physician's opinion and the claimant's testimony appeared consistent with respect to fluctuation of symptoms,

and "[t]he ALJ did not elaborate on what he found to be inconsistent," the Eleventh Circuit concluded "that this reason [does not] provide[] good cause to discount" the physician's assessment. *Id.* Thus, the Eleventh Circuit stated that "fluctuating symptoms, producing both good and bad days, do not *preclude* a finding of disability." *Id* (emphasis added).

Here, because the ALJ found substantial evidence to support her finding that Claimant's testimony was inconsistent with the record, and because the ALJ did not cite periods of improvement as a basis of her finding, Claimant's argument invoking *Tavarez* misses the mark. Even if the ALJ based her finding on fluctuating symptoms, any resulting error would be harmless. *See Wilson v. Comm'r of Soc. Sec.*, 500 F. App'x 857, 859-60 (11th Cir. 2012) (noting that remand was unwarranted even if the ALJ cited an improper finding to support his adverse credibility determination because there was sufficient evidence within the record to support the ALJ's other reasoning for his adverse credibility determination); *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (holding that an ALJ's failure to consider a claimant's inability to afford treatment did not constitute reversible error when the ALJ did not rely primarily on a lack of treatment to find that the claimant was not disabled). Further, the ALJ's finding is supported by substantial evidence in the form of medical records from treating and examining physicians, so any error in the consideration of symptom fluctuation or periods of improvement would be harmless. *See Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005) ("[W]hen an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand."); *see also Brown v. Comm'r of Soc. Sec.*, 459 F. App'x 845, 846 (11th Cir. 2012) (holding that an ALJ's inaccurate assertion was "harmless because the remaining evidence provided a substantial basis for the ALJ's conclusion"). Because

the ALJ clearly articulated the substantial evidence supporting her findings, her decision with respect to Claimant's testimony is affirmed.

## IV.    CONCLUSION

Accordingly, upon due consideration, it is **ORDERED** that:

1.    The final decision of the Commissioner is **AFFIRMED**; and

2.    The Clerk is directed to enter judgment for the Commissioner and against Claimant and close the case.

**DONE** and **ORDERED** in Orlando, Florida on January 28, 2019.

DANIEL C. IRICK
UNITES STATES MAGISTRATE JUDGE


Copies furnished to:

Counsel of Record
The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

The Honorable Emily Ruth Statum
Administrative Law Judge
c/o Office of Disability Adjudication and Review
SSA ODAR Hearing Ofc
3505 Lake Lynda Drive
Suite 300
Orlando, Florida 32817-9801